UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| GEOFF McCALLA, | ) | |
| a/k/a GEOFFREY DAVID McCALLA,[1] | ) ) | Civil Action No. |
| Plaintiff, | ) ) | 15:15-CV-387-JMH |
| v. | ) ) | **MEMORANDUM OPINION** |
| UNITED STATES OF AMERICA, *et al.*, | ) ) ) | **AND ORDER** |
| Defendants. | ) | |

***** ***** ***** *****

Plaintiff Geoff McCalla is an inmate confined by the Bureau of Prisons ("BOP") at the Federal Medical Center ("FMC")-Lexington located in Lexington, Kentucky. McCalla has filed a *pro se* civil rights complaint asserting claims under 28 U.S.C. § 1331, pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), and under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680. [R. 1; supplemented at R. 5]

McCalla's claims stem from the alleged harassment and the confiscation and/or destruction of his personal property by FMC-

---

[1] The Bureau of Prisons ("BOP") identifies McCalla, BOP Register No. 43058-112, as "Geoffrey David McCalla." *See* https://bop.gove/inmateloc/ (last visited on April 26, 2016). Accordingly, the Clerk of the Court will be instructed to list, on the CM/ECF cover sheet, "Geoffrey David McCalla" as an alias designation for McCalla.

Lexington officials in June or July 2013, and again in mid-October 2013. McCalla has paid the $400.00 filing fee [R. 4].

The Court conducts a preliminary review of McCalla's complaint because he asserts claims against the United States and other government officials. 28 U.S.C. § 1915A. In such cases, a district court must dismiss any action which: (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief. *Id*. Because McCalla is proceeding *pro se*, the Court liberally construes his claims and accepts his factual allegations as true. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007) But as explained below, the Court determines that McCalla's FTCA claims are barred by statute; that his *Bivens* allegations fail to state a claim upon which relief can be granted; and that McCalla's complaint must be dismissed, with prejudice.

## ALLEGATIONS OF THE COMPLAINT

McCalla alleges that "in late June or July of 2013," Officer Vaughn "and others" conducted a shakedown of his unit at FMC-Lexington, during which they confiscated "numerous unnamed items," and left McCalla's locker and area "in a mess." [R. 5, p. 2] McCalla alleges that he requested a confiscation form "for everything taken," but that Lieutenant Stanley refused to

provide him with that form. [*Id.*] McCall states that he informed Captain Carpenter that "his officers were breaking the law;" that Carpenter refused the legal authority which he provided showing that the officers were breaking the law; and that he then filed a BP-9 Request for Administrative Remedy with the Warden, complaining about the confiscation. [*Id.*] McCalla states, "The BP-9 was informally resolved with the understanding that all officers would be retrained to obey the law of confiscation." [*Id.*]

McCalla alleges that he and a group of other FMC-Lexington inmates were known as "gamers," because they frequently played "pencil and paper" games and table-top "role-playing games" such as "Dungeons and Dragons" in the Recreation area of the prison. [*Id.*] McCalla alleges that Officer Vaughan had a history of harassing the "gamers," but that Lieutenant Cruz had instructed Officer Vaughan to stop "escalating issues" with the "gamers." [*Id.*]

McCalla alleges that in mid-October 2013, he and other FMC-Lexington "gamers" were pursuing their hobby in the Recreation area, and that Officers Vaughan, Bowdry, and Bowen entered the Recreation area, "accosted" them, and "dragged" them to the Lieutenant's Office, where "virtually everything we had on us was confiscated." [*Id.*] McCalla alleges that other officers then proceeded to confiscate personal property of "gamers" who

were not even in the Recreation Area at the time of this incident. [*Id.*] McCalla alleges that Officer Vaughan targeted the "gamers" in violation of a direct order from S.I.A. Anderson. [*Id.*]

McCalla further alleges that Officer Terry went through his bag and removed non-contraband items, such as items related to the "Dungeons and Dragons" game and "all hand written materials," and that Lieutenant Shaver presided over the confiscation process. [*Id.*, pp. 2-3] Three days after this incident, McCalla tried to explain to Lieutenant Shaver that his property, and the personal property belonging of the other "gamers," did not constitute contraband; that Shaver was not receptive to his arguments; and that Shavers instead ordered an unidentified "daywatch Lieutenant" to destroy most of the personal property confiscated from McCalla and the other gamers. [*Id.*, p. 3][2]

McCalla claims that the destruction of his confiscated property was premature because it violated the 7-day notice period set forth in 28 C.F.R. § 533.13(b)(2)(ii); that he submitted several e-mails to Special Investigations Agent ("SIA") Anderson complaining about the destruction of his

---

[2] It appears from the complaint that McCalla salvaged some of the confiscated personal property, because he alleges that he "…promised to, and did, return the non-contraband recovered items to their owers [sic]…, *see* R. 5, p. 3, but the complaint is unclear as to exactly how much property, and whose property, was actually destroyed.

personal property; but that he received no response from Anderson. [*Id.*, pp. 3-4]

McCalla alleges that after he e-mailed the Warden to convey his complaint, the Warden advised him to file a Tort Claim, but that before he did so, he wanted "a report to support my claim as the property in question had no receipts…." [*Id.*, p. 4] When McCalla finally met with Lieutenant Fowler on February 6, 2014, he gave Fowler a copy of the applicable law regarding property confiscation (28 C.F.R. § 553.13), and Fowler assured him that he would convey that information to S.I.A. Anderson. [*Id.*]

McCalla states that because nothing happened after his meeting with Fowler, he submitted an FTCA administrative claim form, known as a Standard Form ("SF") 95, on or about September 15, 2015, well within the two-year statute of limitations period for submitting an FTCA claim. [*Id.; see also* SF 95 R. 1-1, pp. 1-3] In his SF 95, McCalla stated that he lost manuscripts, screenplays, various types of game design, story ideas, and character descriptions, which were irreplaceable and worth millions of dollars, *see* R. 1-1, p. 3, and he requested damages in the amount of $10 million. *See id.*, p. 1.

McCalla alleges that soon after he filed his SF 95, Lieutenant Shaver identified himself as the investigator assigned to his FTCA claim, and asked him if he would informally

resolve the claim, but offered nothing that McCalla considered to be an acceptable alternative. On September 15, 2015 Matthew W. Mellady, BOP Regional Counsel,[3] issued an acknowledgment of McCalla's FTCA claim, assigning it Administrative Tort Claim No. TXT-MXR-2015-06334, and advising that the BOP had six months from that date in which to adjudicate the claim. [R. 1-1, p. 4]

On November 25, 2015, Mellady (again under Martinez's signature), denied McCalla's claim as time-barred. [*Id.*, p. 5] In doing so, Mellady evaluated McCalla's claim exclusively under 31 U.S.C. § 3723, *Small claims for privately owned property damage or loss,* pursuant to which federal agencies have authority to settle certain "claim[s] for not more than $1,000 for damage to, or loss of, privately owned property that…is caused by the negligence of an officer or employee of the United States Government acting within the scope of employment…." *See* 31 U.S.C. § 3723(a)(1). Mellady concluded, however, that McCalla's claim was barred by the one-year limitations period for filing claims under § 3723(b), noting that the complained-of events at FMC-Lexington occurred in mid-October 2013, but that McCalla did not submit his SF 95 until September 15, 2015, well past the one-year limitations period set forth in § 3723(b). [*Id.*] McCalla filed this action on December 29, 2015.

---

[3] Mellady's name appears under the signature of Carlos Martinez, who is the Supervisory Attorney at the BOP's Consolidated Legal Center in Lexington, Kentucky.

6

In his complaint filed herein, McCalla alleges that method and manner in which his personal property was confiscated violated the federal constitution and various BOP regulations, and constituted an illegal seizure of his personal property. McCalla further alleges that Carlos Martinez issued a "fraudulent denial" of his FTCA claim, *see* R. 5, p. 5, and that Martinez improperly (and fraudulently) denied him of due process of law by addressing his SF 95 under the small claims statute, 31 U.S.C. § 3723, instead of under the provisions of the FTCA. *See* R. 1, pp. 2-3. McCalla alleges that the seven individually named FMC-Lexington defendants, and unnamed "John Doe" defendants, violated his right to due process, guaranteed under the Fifth Amendment of the U.S. Constitution, and harassed him in violation of the Eighth Amendment of the U.S. Constitution, which prohibits cruel and unusual punishment.

McCalla thus asserts constitutional claims against the individually named FMC-Lexington, under *Bivens*, and against the United States, under the FTCA. McCalla seeks $10 million in damages pursuant to his FTCA claim; a finding that Carlos Martinez committed a "civil fraud;" lesser but additional monetary damages from Carlos Martinez; and an order preventing his transfer to another BOP facility in retaliation for the fact that he filed this action. [R. 1, p. 4; R. 5, pp. 5-6]

## DISCUSSION

McCalla's FTCA claims are barred 28 U.S.C. § 2680(c), which provides governmental immunity for "[a]ny claim arising in respect of the assessment or collection of any tax or customs duty, or the detention of any goods, merchandise, or other property by any officer of customs or excise or any other law enforcement officer." § 2680(c) (emphasis added). This principle was solidified in concrete a few years a go by the Supreme Court's decision in *Ali v. Federal Bureau of Prisons*, 552 U.S. 214, 128 S.Ct. 831, 169 L.Ed.2d 680 (2008), which explained that § 2680(c) applies to BOP officials alleged to have improperly detained goods, merchandise, or other property belonging to federal prisoners. *Ali* will be discussed further herein.

It is unclear why BOP Supervisory Attorney Carlos Martinez, acting through BOP Regional Counsel Matthew Mellady, failed to address this well-established immunity in the November 25, 2015, letter denying McCalla's Administrative Tort Claim No. TXT-MXR-2015-06334, and McCalla's confusion about why Martinez denied his claim under a related statute, 31 U.S.C. § 3723, is understandable. But the fact that Martinez (and/or Mellady) failed to mention *Ali* and the immunity afforded law enforcement officers under § 2680(c) does not change the fact that *Ali* and § 2680(c) **completely bar** McCalla's claim challenging the

confiscation and destruction of his personal property under the FTCA, and thus, McCalla's claims against the United States under the FTCA must be dismissed at the initial screening stage under 28 U.S.C. § 1915A(b)(2).

"The [FTCA] is a limited waiver of sovereign immunity, making the Federal Government liable for the same extent as a private party for certain torts of federal employees acting within the scope of their employment." *United States v. Orleans*, 425 U.S. 807, 813 (1976); *see* 28 U.S.C. § 1346(b). Congress carved out several exclusions, however, from the waiver of sovereign immunity for torts committed by federal employees, and these are listed under 28 U.S.C. § 2680(a) through (n). Without a waiver of sovereign immunity, a federal court lacks subject matter jurisdiction over claims against the federal government. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994).

Among those exclusions, and pertinent to McCalla's claim for loss of his property, is § 2680(c)'s exclusion of "[a]ny claims arising in respect of the assessment of collection of any tax or customs duty, or the detention of any property by any officer of customs or excise or any other law enforcement officer (emphasis supplied) [ .]" In *Ali*, the Supreme Court reversed *Kurinsky v. United States*, 33 F.3d 594 (6th Cir. 1994), and several other circuit court decisions, to hold that BOP officers were "law enforcement officers" under the foregoing

exception. Under the Supreme Court's broad construction of § 2680(c), the waiver of the federal government's sovereign immunity under other parts of the FTCA was excluded, so a prison inmate could not recover under the FTCA for the loss of his property at the hands of prison employees. In doing so, the Supreme Court also determined that the United States maintains sovereign immunity with respect to the detention of a prisoner's property. *Ali*, 128 S.Ct. at 84. McCalla's claim challenging the confiscation and/or destruction of his personal property under the FTCA is thus completely barred by sovereign immunity, pursuant to § 2680(c).

This result is not altered by the fact that McCalla alleges that the confiscation and destruction of his personal property was intentional. Courts addressing this issue have uniformly held that claims alleging both negligent **and** intentional destruction of personal property are barred by the 28 U.S.C. § 2680(h). *See Gasho v. United States*, 39 F.3d 1420, 1433–34 (9th Cir. 1994) (holding that the exception to the waiver of immunity provided in § 2680(c) is applicable to alleged intentional detention or mishandling of property); *Padilla v. Morgan*, No. 4:14-CV-04045, 2015 WL 5996181, at *8 (D.S.C. Oct. 13, 2015) (holding prisoner's claim alleging the intentional destruction of his personal property under the FTCA was barred by § 2680(c); *Williams v. Mestas*, No. 09-CV-331-BNB, 2009 WL 1396147, at **1-2

(D. Colo. May 15, 2009) (holding that under 28 U.S.C. § 2680(c),
the plaintiff's claim premised on the alleged "intentional"
destruction of property fell outside the scope of the FTCA);[4]
*Storm v. Bureau of Prisons*, No. 4:08CV1690, 2009 WL 1163123
(N.D. Ohio Apr. 29, 2009).

McCalla's complaint involves the loss of his property that
was detained by federal officials, hence his cause of action
under the FTCA arises out of that detention of goods, and is
thus barred by sovereign immunity.  McCalla's complaint does not
state a claim under the FTCA, regardless of whether his
allegation is that the detention of property was due to
negligence or to intentional conduct.  *See Storm*, 2009 1163123
at *4.  Therefore, his claim is not cognizable under the FTCA
and must be dismissed with prejudice.

McCalla next asserts *Bivens* claims against various
individually named FMC-Lexington defendants, claiming that by
confiscating and/or destroying his personal property, they
violated his right to due process guaranteed under the Fifth
Amendment of the U.S. Constitution, and/or harassed him in
violation of the Eighth Amendment of the U.S. Constitution.  To

---

[4] The district court explained that although the plaintiff alleged that
the taking and ultimate destruction of his property was an
unauthorized intentional act by Defendant Mestas, the waiver of
immunity for intentional torts did not apply to Williams's claims
because it is limited to assault, battery, false imprisonment, false
arrest, abuse of process, or malicious prosecution under 28 U.S.C. §
2680(h).  *Id.* at *2.

11

the extent that McCalla alleges that confiscation and/or destruction of his property was negligent, his claim must be dismissed, because negligent actions (or omissions) by prison officials do not implicate the Due Process Clause. *See Daniels v. Williams*, 474 U.S. 327, 328 (1986).

To the extent that McCalla alleges that the deprivation of his personal property was intentional, under *Bivens*, he still fares no better. In *Hudson v. Palmer*, 468 U.S. 517, 533 (1984), the Supreme court explained that even an intentional deprivation of property does not constitute a violation of the Due Process Clause "if a meaningful postdeprivation remedy for the loss is available." *Id*. at 533.[5] Here, such a post-deprivation remedy is found in the administrative remedy procedure set forth in 28 C.F.R. §§ 542.13-15, through which the BOP provides federal prisoners with a three-step grievance process for challenging any aspect of their confinement, which would include the confiscation and/or destruction of his personal property.

---

[5] The Sixth Circuit has similarly held that to prevail on a procedural due process claim, a plaintiff must 1) demonstrate that he is deprived of property as a result of established procedure that itself violates due process rights; or 2) prove that the defendants deprived him of property pursuant to a "random and unauthorized act" and that available remedies would not adequately compensate for the loss. *See Macene v. MJW, Inc*., 951 F.2d 700, 706 (6th Cir. 1991). Here, McCalla does not allege that that he was deprived of property as a result of an established procedure that *itself* violated due process rights; he clearly alleges that the deprivation of his personal property, and the personal property of the other inmate "gamers," resulted from the random and unauthorized harassment and actions of MC-Lexington officials who disliked the organized activities of the "gamers".

*Bowens v. U.S. Dept. of Justice*, 415 F. App'x 340, 344 (3rd Cir. 2011), is instructive on this issue because in *Bowens*, the prisoner filed a *Bivens* action alleging the confiscation of his photographs amounted to a deprivation of property without due process of law. *Id.* at 341-41. The district court dismissed the claim, concluding that Bowens had an adequate post-deprivation remedy in the form of the BOP's administrative remedy scheme. *Id.* at 344. In affirming the dismissal, the Third Circuit stated:

> Under *Hudson v. Palmer*, 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) and its progeny, deprivation of property by a government employee does not violate due process so long as an adequate post-deprivation system is in place. *See id*. at 533, 104 S.Ct. 3194; *Monroe v. Beard*, 536 F.3d 198, 210 (3d Cir.2008). The BOP's Administrative Remedy Program, of which Bowens availed himself, qualifies as such an adequate system.

*Bowens*, 415 F. App'x at 344; *see also Williams v. Mestas*, 355 F. App'x at 224 (affirming the dismissal of prisoner's *Bivens* claims alleging the confiscation and destruction of his legal materials and personal photographs in violation of the Fifth and Fourteenth Amendments, because "…the prison provided him with an administrative remedy to challenge the destruction of his property.").

McCalla therefore cannot succeed on his constitutional claim challenging the intentional deprivation of his personal property, because he has an available administrative remedy

13

procedure, set forth in 28 C.F.R. §§ 542.13-15, through which he could have challenged the detention and/or destruction of his personal property.   Further, to the extent that McCalla complains about the alleged destruction of his personal property, he had yet another remedy available to him:  he could have filed a claim under 31 U.S.C.A. § 3723, *Small claims for privately owned property damage or loss*.  *See* 31 U.S.C. § 3723; *Ali*, 552 U.S. at 228 n. 7 (2008); *Sautter v. Hatt*, No. 4:12CV2399, 2015 WL 1915251, at *13 (N.D. Ohio Apr. 27, 2015). Under this statute, however, a claim "…may be allowed only if it is presented to the head of the agency within one year after it accrues." *See* 28 U.S.C.A. § 3723(b).  But as Matthew Mellady properly concluded, however, even that claim was time-barred, because McCalla alleged that his property was confiscated and destroyed in **October 2013**, but he did not submit his SF 95 claim to the BOP form until almost two years later, in **September 2015**. McCalla's Fifth Amendment due process claims against the individually named FMC-Lexington officials will therefore be dismissed with prejudice.

McCall's substantive due process claim (challenging the confiscation and/or destruction of his personal property) is also subject to dismissal.  Due process claims of this nature involve official acts which cause a deprivation of a substantive fundamental right.  *Mertik v. Blalock*, 983 F.2d 1353, 1367 (6th

14

Cir. 1993). In addition, under substantive due process, courts have invalidated laws or actions of government officials that "shock the conscience." *See United States v. Salerno*, 481 U.S. 739, 746 (1987). These actions are unconstitutional regardless of the procedural protections provided. *Parate v. Isibor*, 868 F.2d 821, 832 (6th Cir. 1989). A citizen, however, does not suffer a constitutional deprivation every time he is subjected to some form of harassment by a government agent. *Id*. at 833. The conduct asserted must be "so severe, so disproportionate to the need presented, and such an abuse of authority as to transcend the bounds of ordinary tort law and establish a deprivation of constitutional rights." *Id*. (citation and internal quotation marks omitted). The act of confiscating McCalla's property, alone, does not reflect the type of severe and extreme conduct which violates the substantive component of the Due Process Clause.

Given McCalla's allegation that prison officials targeted him and the other FMC-Lexington "gamers" with ongoing and unwarranted harassment, *see* R. 1, p. 2, his claim qualifies, at best, as one of harassment under the Eighth Amendment. But harassment of a prisoner by a prison official, even if egregious, shameful, and utterly unprofessional, does not amount to an Eighth Amendment violation. *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004); *Ivey v. Wilson*, 832 F.2d 950,

954 (6th Cir. 1987); *see also Violett v. Reynolds*, 76 F. App'x
24, 27 (6th Cir. 2003).

For these reasons, McCalla's Fifth and Eighth Amendment
*Bivens* claims against individually named defendants Captain
"Carpenter," Captain of Corrections at FMC-Lexington; Lieutenant
"Shaver," Lieutenant of  Corrections at FMC-Lexington; retired
Officer  "Bowdry,"  Correctional  Officer  at  FMC-Lexington;
Officer "Bowen," Correctional Officer at FMC-Lexington; Officer
"Terry," Correctional Officer at FMC-Lexington; and "John Doe"
defendants, will be dismissed with prejudice for failure to
state a claim upon which relief can be granted.

Next, McCalla alleges that Defendant Carlos Martinez
violated his right to due process of law by "fraudulently"
denying his SF 95. *See* R. 1. p. 3; R. 5, p. 5.  Further, while
McCalla did not specifically so allege, he also appears to be
claiming that Warden Francisco Quintana violated his due process
rights by failing to prevent the confiscation from occurring,
failing to stop the alleged harassment of the "gamers," or
failing to take appropriate remedial action after the
confiscation occurred. *See* R. 5, p. 4 ("I finally emailed the
Warden asking him to order his staff (i.e. S.I.A. Anderson) to
respond to my complaints.").

McCalla's claims against these two defendants fail because
in order to recover against a defendant in a *Bivens* action, the

16

plaintiff "must allege that the defendant [was] personally involved in the alleged deprivation of federal rights." *Nwaebo v. Hawk-Sawyer*, 83 F. App'x 85, 86, 2003 WL 22905316, *1 (6th Cir. 2003) (citing *Rizzo v. Goode*, 423 U.S. 362, 373-77 (1976)). The mere fact that a defendant acted in a supervisory capacity is not enough: *respondeat superior* (vicarious liability) is not an available theory of liability in a Bivens or 42 U.S.C. § 1983 action. *Polk County v. Dodson*, 454 U.S. 312, 325-26 (1981). With respect to Defendants Carlos Martinez, BOP Counsel, and FMC-Lexington Warden Francisco Quintana, McCalla does not allege, nor would does the record demonstrate, that either of these defendants were personally involved in the confiscation, detention or destruction of McCalla's personal property.  For these reasons, McCalla's Fifth Amendment due process claims against these defendants must be dismissed with prejudice.

To the extent that McCalla alleges that he was dissatisfied with the structure of administrative remedy process itself, or with the outcome of that administrative remedy process, he states no claim for relief under *Bivens*.  There is "no constitutionally protected due process interest in unfettered access to a prison grievance procedure," *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); and likewise, there is "no inherent constitutional right to an effective prison grievance procedure." *Argue v. Hoffmeyer*, 80

17

F. App'x 427, 430 (6th Cir. 2003) (citing *Hewitt v. Helms*, 459 U.S. 460, 467 (1983). By the same token, the mere denial of prisoner grievances by supervisory or higher-ranking administrative officials is insufficient personal involvement for imposing constitutional liability, under *Bivens* or its state court corollary, 42 U.S.C. § 1983. *See Johnson v. Aramark*, 482 F. App'x 992, 993 (6th Cir. 2012); *Alder v. Corr. Med. Servs.*, 73 F. App'x 839, 841 (6th Cir. 2003). McCalla's Fifth Amendment due process claims against these two defendants must therefore be dismissed for failure to state a claim upon relief can be granted.

McCalla also repeatedly alleges that the confiscation and ultimate destruction of his personal property violated 28 C.F.R. § 553.13, which sets forth the proper method for seizure of property considered to be "contraband." McCalla alleges that the notice procedure of that regulation was not followed. McCalla's claim on that issue also fails, because in his complaint, McCalla does not allege that *his* confiscated property qualified as contraband; if that was his intention, he failed to convey it. McCalla's description of the nature of the confiscated items was confusing and imprecise, but McCalla appears to be alleging just the opposite; that his confiscated property did **not** constitute contraband. *See* R. 1-1, p. 3; R. 5, p. 5. McCalla does indicate that some of personal property

confiscated by FMC-Lexington officials consisted of contraband, *see* id., p. 3, but again, he fails to allege that any of the confiscated "contraband" belonged to him.[6]

Further, if McCalla is attempting to assert the constitutional rights of his fellow inmates and "gamers" in relation to their confiscated property (whether it was contraband or non-contraband) he cannot do so, because a prisoner can only assert his constitutional claims, not the rights of others. *Whitmore v. Arkansas*, 495 U.S. 149 (1990); *Connection Dist. Co. v. Holder*, 557 F.3d 321, 345 (6th Cir. 2009). Thus, 28 C.F.R. § 553.13 simply provides no support for McCalla's claims.[7]

Even further assuming that the named FMC-Lexington officials failed to follow the BOP's regulations, internal procedures, or policy statement(s), such a failure, or series of failures, would not violate the Constitution. *See Flanigan v. Wilson*, No. 10-CV-111-GFVT, 2011 WL 5024432, at * 3 (E.D. Ky.

---

[6] Again, to the extent that McCalla alleges that his non-contraband property was improperly confiscated and/or destroyed by law enforcement officers, *Ali* and 28 U.S.C. § 2680(c) render the United States immune and preclude any recovery under FTCA.

[7] The Court further notes that 28 U.S.C. § 2680(c)(1) is only invoked when "the property was seized for the purpose of forfeiture under any provision of Federal law providing for forfeiture of property other than as a sentence imposed upon conviction of a criminal offense." *See* 28 U.S.C. § 2680(c)(1). McCalla does allege that his personal property was seized for the purpose of forfeiture pursuant to Federal law.

Oct. 20, 2011)(citing *Cleveland Bd. of Educ. v. Loudermill*, 470
U.S. 532, 541 (1985) and *Smith v. City of Salem*, 378 F.3d 566,
578 (6th Cir. 2004)); *Reyes v. Holland*, No. 0:11-CV-90-HRW, 2012
WL 639469, at **3-4 (E.D. Ky. Feb.27, 2012).

Finally, McCalla seeks an order, (essentially a preliminary
injunction) preventing officials at FMC-Lexington from
transferring him to another BOP facility, asserting that they
make take such action may against him in retaliation for his
having filed this action. *See* R. 1, p. 4; R. 6, p. 6.

Generally, the moving party bears the burden of
establishing his entitlement to a preliminary injunction. *See
Overstreet v. Lexington-Fayette Urban County Gov't*, 305 F.3d
566, 573 (6th Cir. 2002). In addressing a motion for a
preliminary injunction, a court should consider: (1) whether
the movant has a strong likelihood of success on the merits; (2)
whether the movant will suffer irreparable harm without the
injunction; (3) the probability that granting the injunction
will cause substantial harm to others; and (4) whether the
public interest will be advanced by issuing the injunction.
*Summit County Democratic Central and Executive Committee v.
Blackwell*, 388 F.3d 547, 552 (6th Cir. 2004). "These factors
are not prerequisites, but are factors that are to be balanced
against each other." *Overstreet*, 305 F.3d at 573. Usually, the
failure to show a likelihood of success on the merits is fatal.

*Gonzales v. National Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000).

McCalla obviously has not demonstrated the likelihood of success on the merits, because the Court has dismissed both his *Bivens* and FTCA claims, so he has not satisfied the first criterion of the analysis. Further, McCalla filed this action on December 29, 2015, almost four (4) months ago, and the BOP's website reveals that McCalla has not been transferred, and currently remains confined at FMC-Lexington. *See* https://www.bop.gov/inmateloc/ (last visited on April 26, 2016). Thus, McCalla's speculation that he will transferred in retaliation for having filed this lawsuit appears to be nothing more than just that: unsubstantiated speculation.

As for the second criterion of the injunctive relief analysis, McCalla has not alleged that he will suffer irreparable injury without an injunction, and the Court ascertains no facts from the complaint indicating that McCalla would suffer such harm absent an injunction. Addressing the third and fourth criteria of the analysis, McCalla does not allege that others would suffer harm if injunctive relief is denied, nor has he demonstrated that the public interest would be adversely affected if his request for an injunction is denied.

Indeed, such an injunction could constitute harm. "In the context of prison management ... the status quo is to allow the BOP to manage its facilities and the prisoners incarcerated there. A restraining order would disturb the status quo and encroach on the BOP's discretion." *Smith v. Sniezak*, No. 4:07-CV-0306, 2007 WL 642017, *2 (N.D. Ohio February 27, 2007). The courts are ever cautioned to stay out of the business of micro-managing prisons. *See Bell v. Wolfish*, 441 U.S. 520 (1979); 482 U.S. 78 (1987); *Turney v. Scroggy*, 831 F.2d 135 (6th Cir. 1987). In keeping with this established concept, this Court declines to interject itself into the administrative decisions pertaining to McCalla at FMC-Lexington, including any transfer that officials at FMC-Lexington would have the authority and discretion to order.

For the reasons set forth above, McCalla's complaint will be dismissed and judgment will be entered in favor the named defendants.

## CONCLUSION

Accordingly, **IT IS ORDERED** that:

1. The Clerk of the Court shall **LIST**, on the CM/ECF cover sheet, "Geoffrey David McCalla" as an alias designation for Plaintiff Geoff McCalla.

2. The 28 U.S.C. § 1331 constitutional claims which McCalla asserts against the individually named defendants:

Francisco Quintana, Warden, FMC-Lexington; Captain "Carpenter," Captain of Corrections, FMC-Lexington; Lieutenant "Shaver," Lieutenant of Corrections, FMC- Lexington; retired Officer "Bowdry," Correctional Officer, FMC-Lexington; Officer "Bowen," Correctional Officer, FMC-Lexington; Officer "Terry," Correctional Officer, FMC-Lexington; Carlos Martinez, BOP Supervisory Attorney at FMC-Lexington; and John Doe(s), "Unknown Lieutenant," FMC-Lexington, under the Fifth and Eighth Amendments of the U.S. Constitution, are **DISMISSED WITH PREJUDICE.**

3.    The claims which McCalla asserts against the United States of America under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671-2680, are **DISMISSED WITH PREJUDICE.**

4.    McCalla's request for an order preventing FMC-Lexington officials from transferring him to another BOP facility, *see* R. 1, p. 4; R. 5, p. 6, is **DENIED**.

5.    The Court will enter an appropriate Judgment.

6.    This matter is **STRICKEN** from the docket.

This April 27, 2016.



**Signed By:**

**_Joseph M. Hood_**

**Senior U.S. District Judge**